66 P.3d 653 (2003)
116 Wash.App. 454
STATE of Washington, Respondent,
v.
Cedric Dion ALLEN, Appellant.
State of Washington, Respondent,
v.
Bruce Andrew Schafer, Appellant.
Nos. 20869-9-III, 20886-9-III.
Court of Appeals of Washington, Division 3, Panel Four.
April 10, 2003.
*655 William D. Edelblute, Cece L. Glenn, Spokane, WA, for Appellants.
Kevin M. Korsmo, Andrew J. Metts, III, Deputy Prosecuting Attorneys, Spokane, WA, for Respondents.
*654 KATO, A.C.J.
In this consolidated appeal, Cedric Allen and Bruce Schafer appeal convictions for second degree assault and unlawful imprisonment. We affirm the unlawful imprisonment convictions, but we reverse the second degree assault convictions and remand for resentencing.
Mr. Allen and Mr. Schafer were charged with first degree rape and first degree kidnapping.[1] The charges arose from an incident involving 16-year-old L.S. in February 2001. L.S. testified she gave Mr. Allen her phone number while she was working at a fast-food restaurant, and he later arranged to pick her up at her home. She testified she and Mr. Allen drove around for one to two hours, and she repeatedly told him she wanted to go home. Eventually, Mr. Allen met with Mr. Schafer and another man, and the three men and L.S. then went to an apartment where Mr. Allen and Mr. Schafer conducted a drug deal. L.S. then testified:
I was talking to the white guy [Mr. Schafer], telling him that I didn't feel right withsorrywith Cedric, and he just told me to go in the bedroom with the black guy [Mr. Allen], and he's like, oh show me your tits and I'll take you home, and I was like fine, because I wanted to go home and I was scared, and then the white guy came in, and he just figured that he needed tothat I needed to show him, and it was just aand then I told him I was scared and I just want to go home, and I was in the closet screaming, and ...
. . . .
And the white guy told me that if I was going to cry, he'd give me something to cry about and that I wasn't going to leave until I gave him head, and they both made me do that, and then the black guy said he had to leave and go make a deal and took my jewelry from me and then left, and the white guy was sitting there and was yelling at me, making me do things, and they told me I sucked at giving head so he had to fuck me, and then after it was done, then the [other] black guy [the third man] came back and told me it was my fault.
Report of Proceedings (RP) (Dec. 18, 2001) at 32-33.
L.S. testified she screamed throughout the events, and she tried to leave, but the men would not let her because they were standing near the door. She testified she ran into a closet to try to get away, but Mr. Allen took her out of the closet. At one point, L.S. testified "they" took her pants off, but she later testified it was Mr. Schafer who took her "bottoms" off. RP (Dec. 18, 2001) at 36, 76. She also testified Mr. Schafer struck her with a belt and grabbed her, causing a bruise.
After these events, L.S. testified, she was dropped off at a Seven Eleven store near her home, where she told the clerk she had been raped; the clerk called L.S.'s mother, who in turn called police. Specimens taken at a *656 hospital indicated the presence of sperm in L.S.'s mouth and vagina, but not in sufficient quantities to match to any individual.
Both defendants testified in their defense. Mr. Allen said L.S. gave him free french fries and a drink at the restaurant where she worked, then wrote her phone number on the back of the receipt. He testified he called her later and picked her up, and they met Mr. Schafer and a third man, Alfred "Grump" Baker. The group then went to Mr. Baker's girl friend's apartment, Mr. Allen testified, where he and Mr. Schafer conducted a drug deal. Mr. Allen testified L.S. and Mr. Schafer had been flirting, and when he announced he was going home, L.S. asked if she could get a ride from Mr. Schafer. Mr. Allen testified he then left the apartment alone. He denied having sexual contact with or striking L.S., or preventing her from leaving.
Mr. Schafer admitted having oral sexual contact with L.S. after Mr. Allen left the apartment, but he said it was consensual. Mr. Schafer testified L.S. offered to have vaginal sex with him, but he refused because he did not know her well enough. He testified he was offended by her request for payment for performing oral sex. He denied demanding sex from L.S. or preventing her from leaving.
A jury found both defendants guilty of the lesser included offenses of second degree assault and unlawful imprisonment, both with sexual motivation.[2]
Mr. Allen was sentenced as a persistent offender to life without possibility of early release for the assault and 60 months for the unlawful imprisonment. Mr. Schafer was sentenced to 13 months for the assault and 8 months for the unlawful imprisonment, to be served concurrently.
We first address Mr. Allen's pro se contention that the court erred in denying his motion for a bill of particulars. The information charged in pertinent part:
COUNT I: FIRST DEGREE RAPE, committed as follows: That the defendants, CEDRIC DION ALLEN, and BRUCE ANDREW SCHAFER, as actors and accomplices to each other, in the State of Washington, on or about between February 04, 2001 and February 5, 2001, did engage in sexual intercourse by forcible compulsion with [L.S.], did kidnap the said [L.S.],
COUNT II: KIDNAPPING IN THE FIRST DEGREE, committed as follows: That the defendants, CEDRIC DION ALLEN, and BRUCE ANDREW SCHAFER, as actors and accomplices to each other, in the State of Washington, on or about between February 04, 2001 and February 5, 2001, did, with intent to facilitate commission of a felony or flight thereafter, intentionally abduct [L.S.], further the defendants CEDRIC DION ALLEN, and BRUCE ANDREW SCHAFER, committed said crime with sexual motivation under the provisions of RCW 9.94A.030 and 9.94A.127.
Clerk's Papers (No. 20886-9-III) (Allen CP) at 15.
Mr. Allen moved for a bill of particulars pursuant to CrR 2.1(c), contending the information was insufficiently specific to permit him to prepare adequately for trial. The court held the information was sufficient and denied the motion.
The function of a bill of particulars is "to amplify or clarify particular matters considered essential to the defense." State v. Noltie, 116 Wash.2d 831, 845, 809 P.2d 190 (1991). A trial court's ruling on a request for a bill of particulars is reviewed for abuse of discretion. Id. at 844, 809 P.2d 190.
The test in passing on a motion for a bill of particulars should be whether it is necessary that defendant have the particulars sought in order to prepare the defense and in order that prejudicial surprise will be avoided. A defendant should be given enough information about the offense charged so that he or she may, by the use of diligence, prepare adequately for the trial. If the needed information is in the indictment or information, then no bill of particulars is required.
*657 1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 129, at 652-54 (3d ed.1999) (footnotes omitted).
Mr. Allen's pro se brief does not explain how the information failed to provide notice of the nature and elements of the crimes charged. He argued in a memorandum filed in the superior court that the information failed to explain whether the State contended he acted as an accomplice or a principal in committing the rape. However, there is no distinction between accomplice or principal liability, and "the charging of one theory adequately apprises the defendant of his liability for the other." State v. Molina, 83 Wash.App. 144, 148, 920 P.2d 1228 (1996). The record shows Mr. Allen was able to present his defense without a more specific charging document. He thus has failed to establish prejudice, and there is no basis for concluding the court abused its discretion by denying his motion for a bill of particulars.
We next address the defendants' inability to obtain the testimony of a federal prisoner, which they contend deprived them of a fair trial. On the second day of trial, Mr. Schafer's attorney informed the court that he was having trouble arranging for the testimony of a witness:
MR. DRESSLER: Your Honor, ... we do have one witness at the county jail that we want to call.... There is a problem with the transport, Your Honor.
THE COURT: I've heard that. It's something like
MR. DRESSLER: Federal hold. Marshals won't let him come.
THE COURT: Oh, that is a problem. That's a problem that should have been taken care of before now.
MR. DRESSLER: This is the first we heard, Your Honor, leastwise we would have.
RP (Dec. 19, 2001) at 55.
Mr. Dressler then informed the court he was exploring the possibility of arranging for the witness to testify by video conference without leaving the jail. That option apparently was not available, and counsel then sought a writ ad testificandum:
MR. DRESSLER: Your Honor, we're continuing to have difficulties in getting Mr. Baker.[[3]] The paperwork asking for a Superior Court writ is being prepared. It's my understanding that if we can get the U.S. Attorney to agree to it, it is still a matter of discretion on the part of the federal marshals. However, we are proceeding with getting that put together so it can be signed and submitted to the federals.
RP (Dec. 19, 2001) at 87-88. Counsel offered the alternatives of deposing the witness at the jail, continuing the trial until the problem could be resolved, or dismissing the charges. The court took no action at the time. Without calling Mr. Baker as a witness, both defendants rested, "[a]s we have the other problem" (apparently referring to their inability to obtain his testimony). RP (Dec. 19, 2001) at 200.
Both defendants later moved for dismissal because of their inability to obtain Mr. Baker's testimony. The court denied the motion, observing: "This almost seems a little late because it should have probably come in before all parties rested in the case." RP (Dec. 20, 2001) at 8.
The Sixth Amendment provides that a criminal defendant must "have compulsory process for obtaining witnesses in his favor." U.S. CONST. amend. VI; see Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); State v. Smith, 101 Wash.2d 36, 41, 677 P.2d 100 (1984). However, this right is not absolute. Smith, 101 Wash.2d at 41, 677 P.2d 100. The right is limited to those witnesses who "`are relevant and material to the defense.'" State v. Pacheco, 107 Wash.2d 59, 67, 726 P.2d 981 (1986) (quoting Smith, 101 Wash.2d at 41, 677 P.2d 100). The defendant bears the burden of showing relevance and materiality. Smith, 101 Wash.2d at 41, 677 P.2d 100.
The record contains no demonstration that Mr. Baker's testimony would be relevant and material to the defense. In fact, it is not *658 apparent from the record that Mr. Baker was even present in the apartment at the time of the events in question. Even if he were present, the defendants have failed to describe, either to the trial court or to this court, the substance of Mr. Baker's proposed testimony. They thus have failed to demonstrate the relevance and materiality of that testimony. Their inability to procure the testimony did not deprive them of a fair trial.
The defendants also appear to contend that the court erred in refusing their request for a continuance to permit them to obtain Mr. Baker's testimony. However, it is error to deny such a continuance only if the defendant demonstrates he has made a diligent effort to procure the presence of the witness. State v. Smith, 56 Wash.2d 368, 370, 353 P.2d 155 (1960). Here, the issue was raised only on the second day of trial, and the defendants failed to demonstrate they had made diligent efforts before trial to procure Mr. Baker's presence. The court did not err in denying their request for a continuance.
We next address whether the court erred in permitting the jury to convict the defendants of second degree assault as a lesser included offense of first degree rape. Criminal defendants generally may be convicted only of crimes with which they have been charged. State v. Irizarry, 111 Wash.2d 591, 592, 763 P.2d 432 (1988). However, one statutory exception to this rule is that a defendant may be convicted of a lesser included offense. RCW 10.61.006; see State v. Berlin, 133 Wash.2d 541, 545, 947 P.2d 700 (1997). A two-part test determines whether an offense is lesser included: "[F]irst, each of the elements of the lesser offense must be a necessary element of the offense charged; second, the evidence in the case must support an inference that the lesser crime was committed." Berlin, 133 Wash.2d at 548, 947 P.2d 700 (reaffirming State v. Workman, 90 Wash.2d 443, 447-48, 584 P.2d 382 (1978)).
In State v. Walden, 67 Wash.App. 891, 841 P.2d 81 (1992), the court considered whether fourth degree assault was a lesser included offense of second degree rape. The court noted that assault requires intent and rape by forcible compulsion does not require intent. Id. at 893-94, 841 P.2d 81. The court concluded that fourth degree assault was not a lesser included offense of second degree rape "[b]ecause one can be convicted of rape without proof of the existence of any mental state, while one cannot be convicted of assault without proof of the mental element of intent." Id. at 894, 841 P.2d 81.
The same reasoning applies here. The defendants were charged with first degree rape by forcible compulsion. See RCW 9A.44.040(1). There is no element of intent in the statute.[4] However, second degree assault requires an assault, for which intent is a court-implied element. State v. Davis, 119 Wash.2d 657, 662, 835 P.2d 1039 (1992); State v. Sample, 52 Wash.App. 52, 54, 757 P.2d 539 (1988). Because assault contains the element of intent while first degree rape does not, second degree assault is not a lesser included offense of first degree rape.[5] The court erred in permitting the jury to convict the defendants of second degree assault as a lesser included offense of first degree rape. The assault convictions therefore are reversed.
We next consider Mr. Allen's pro se contention that the court's jury instruction on *659 accomplice liability was improper. The court instructed the jury:
A person who is an accomplice in the commission of the crime is guilty of that crime whether present at the scene or not.
A person is an accomplice in the commission of the crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:
(1) solicits, commands, encourages, or requests another person to commit the crime; or
(2) aids or agrees to aid another person in planning or committing the crime.
Allen CP at 43; Clerk's Papers (No. 20869-9-III) (Schafer CP) at 48; see RCW 9A.08.020(3)(a).
Mr. Allen contends first that the court's instruction suffers from the same problem identified in State v. Roberts, 142 Wash.2d 471, 510, 14 P.3d 713 (2000), in which the jury was instructed it could find the defendant guilty as an accomplice in the commission of a crime. The Roberts court held the instruction erroneously permitted the jury to convict the defendant if he aided in the commission of any crime:
[A]n accomplice need not have knowledge of each element of the principal's crime in order to be convicted under RCW 9A.08.020. General knowledge of "the crime" is sufficient. Nevertheless, knowledge by the accomplice that the principal intends to commit "a crime" does not impose strict liability for any and all offenses that follow.
Roberts, 142 Wash.2d at 513, 14 P.3d 713.
Roberts has no bearing on this case. Roberts expressly approved of the accomplice instruction in State v. Davis, 101 Wash.2d 654, 682 P.2d 883 (1984), which, like the instruction here, permitted the jury to convict if the defendant acted "`with knowledge that it will promote or facilitate the commission of the crime ....'" Roberts, 142 Wash.2d at 512, 14 P.3d 713 (quoting Davis, 101 Wash.2d at 656, 682 P.2d 883).
Mr. Allen also contends the evidence did not support the court's decision to include the accomplice instruction. A jury instruction is proper if there is evidence to support the theory upon which the instruction is based. State v. Davis, 119 Wash.2d 657, 665, 835 P.2d 1039 (1992). L.S.'s testimony establishes at least an inference that Mr. Allen knowingly aided Mr. Schafer in committing the crimes of rape, assault, kidnapping, or unlawful imprisonment. This evidence supported the court's accomplice instruction.
Finally, we address whether the evidence was sufficient to support the unlawful imprisonment convictions.[6] In considering such a challenge, we must view the evidence in a light most favorable to the prosecution and must determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. State v. Green, 94 Wash.2d 216, 220-22, 616 P.2d 628 (1980). We must draw all reasonable inferences in the State's favor and interpret them most strongly against the defendant. State v. Partin, 88 Wash.2d 899, 906-07, 567 P.2d 1136 (1977).
The jury was instructed that a person is guilty of unlawful imprisonment "when he or she knowingly restrains another person." Allen CP at 60; Schafer CP at 65; see RCW 9A.40.040(1). L.S. testified that she screamed and tried to leave the room, but the defendants stood in the door and would not let her leave. This evidence supports the finding that the defendants knowingly restrained her and thus were guilty of unlawful imprisonment.
The defendants argue the evidence was contradictory and inconsistent, and they contend no rational trier of fact could have found all of the elements of the crimes beyond a reasonable doubt. It is true that L.S.'s testimony was at times inconsistent *660 and that the defendants' testimony dramatically contradicted hers. However, it is for the jurynot the appellate courtto determine the credibility of witnesses and to resolve conflicts in the evidence. State v. Carver, 113 Wash.2d 591, 604, 781 P.2d 1308 (1989), 789 P.2d 306 (1989). The jury's findings here are supported by evidence from which a rational trier of fact could have found all of the elements of the crimes beyond a reasonable doubt. The evidence thus was sufficient.
The unlawful imprisonment convictions are affirmed; the second degree assault convictions are reversed, and the cases are remanded for resentencing.
WE CONCUR: SWEENEY and SCHULTHEIS, JJ.
NOTES
[1] Both defendants were charged, as actors or accomplices, with one count of each crime. Mr. Schafer was charged with an additional count of first degree rape.
[2] The jury also found Mr. Schafer not guilty of second degree assault as a lesser included offense of second degree rape under the third count of the information.
[3] The proposed witness apparently was Alfred "Grump" Baker, the third man who allegedly accompanied the defendants and L.S. to the apartment.
[4] Unlike second degree rape (discussed in Walden), first degree rape requires one of the following additional elements: use or threatened use of a deadly weapon, kidnapping of the victim, causing serious injury to the victim, or felonious entry into a building or vehicle. See RCW 9A.44.040(1)(a)-(d). Here, the State alleged the additional element was satisfied by the kidnapping, which is an intentional crime. See RCW 9A.40.020-.030. However, the first degree rape statute does not require that the act of forcible sexual intercourse be the same act as the kidnapping. Focusing solely on the act constituting rape (which is the act at issue here), RCW 9A.44.040(1) does not require proof of intent.
[5] The State relies on two cases in which Washington courts held that second degree assault is a lesser included offense of rape. See State v. Thompson, 58 Wash.2d 598, 606, 364 P.2d 527 (1961), cert. denied, 370 U.S. 945, 82 S.Ct. 1590 (1962); State v. Bowen, 12 Wash.App. 604, 605-09, 531 P.2d 837 (1975). As the State concedes, however, these cases were not based on analyses of the current Washington statutes.
[6] In their opening briefs, the defendants assign error to the court's denial of their motion to dismiss at the close of the State's case. However, by presenting evidence on their own behalf, they waived any challenge to the denial of their motion. See State v. Allan, 88 Wash.2d 394, 396, 562 P.2d 632 (1977); State v. Young, 50 Wash. App. 107, 111, 747 P.2d 486 (1987). We thus treat their arguments as a challenge to the sufficiency of the evidence presented at the entire trial.