# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

CESAR SARAUSAD,
          *Petitioner-Appellee,*

          v.

CAROL PORTER,
          *Respondent-Appellant.*

No. 05-35062

D.C. No.
CV-02-02547-JCC
Western District of
Washington,
Seattle

ORDER

Filed September 10, 2007

Before: Stephen Reinhardt, William A. Fletcher, and
Jay S. Bybee, Circuit Judges.

Order;
Dissent by Judge Callahan

## ORDER

Judge Reinhardt and Judge W. Fletcher voted to deny the petition for rehearing en banc. Judge Bybee voted to grant the petition for rehearing en banc.

A judge of the court called for a vote on the petition for rehearing en banc. A vote was taken, and a majority of the non-recused active judges of the court failed to vote for en banc rehearing. Fed. R. App. P. 35(f).

The petition for rehearing en banc, filed March 19, 2007, is DENIED.

The initial order concerning Petitioner Sarausad's custody is VACATED, and the district court is instructed on remand

to decide whether Sarausad should remain in custody pending the state's decision to retry him.

---

CALLAHAN, Circuit Judge, with whom O'SCANNLAIN, GOULD, BYBEE, and BEA, Circuit Judges, join, dissenting from the denial of rehearing en banc:

I respectfully dissent from the denial of rehearing en banc because the panel majority fails to give the proper deference to the Washington Supreme Court's interpretation of Washington's accomplice liability statute. This is fundamentally a case about Washington state's right to define the parameters of accomplice liability under its own state law. The panel majority not only misinterprets Washington law but also refuses to accord the Washington courts the required deference required by well established precedent and basic principles of federalism. By doing so, the panel majority elevates what it considers to be a Washington state court's mistake in interpreting Washington state law into a constitutional violation. As a result of our lack of deference, our court takes the unprecedented step of rejecting a standardized state jury instruction that the Washington Supreme Court has expressly approved as correctly stating the limits of accomplice liability under state law.

The required deference to state court interpretations of state law was reinforced and supplemented by 28 U.S.C. § 2254(d)(1) after passage of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). The majority opinion simply ignores the Supreme Court's specific instructions in *Williams v. Taylor*, 529 U.S. 362, 410-13 (2000), on how to apply the highly deferential "contrary to" and "unreasonable application of" Supreme Court precedent standards from AEDPA. By avoiding analysis of why — in the face of Washington Supreme Court and Washington appellate court decisions affirming the jury instructions at issue and the principles con-

cerning the limits of accomplice liability under Washington law — the state court decisions were objectively unreasonable applications of a specific Supreme Court holding, the panel majority fails to properly apply AEDPA.

## I. The jury instruction was taken directly from the Washington complicity statute.

Central to our analysis is the language of Washington's complicity statute and the actual language of the jury instruction given in Sarausad's case. The Revised Code of Washington ("RCW") § 9A.08.020 codifies liability for complicity under Washington law. Section 9A.08.020, subsections (2) and (3) define accomplice liability, stating in relevant part:

(2) A person is legally accountable for the conduct of another person when: . . .

(c) He is an accomplice of such other person in the commission of the crime.

(3) A person is an accomplice of another person in the commission of a crime if:

(a) With knowledge that it will promote or facilitate the commission of the crime, he

(i) solicits, commands, encourages, or requests such other person to commit it; or

(ii) aids or agrees to aid such other person in planning or committing it; or

(b) His conduct is expressly declared by law to establish his complicity.

During Sarausad's trial, the trial court gave Instructions 45 and 46 to explain accomplice liability. Instruction 45 stated:

> You are instructed that a person is guilty of *a crime* if it is committed by the conduct of another person for which he is legally accountable. A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of *the crime*.

*Sarausad v. Porter*, 479 F.3d 671, 685 (9th Cir. 2007). Instruction 46 defined accomplice liability for the jury as follows:

> A person is an accomplice in the commission of *a crime* if, with knowledge that it will promote or facilitate the commission of *the crime*, he or she either:
>
> > (1) solicits, commands, encourages, or requests another person to commit *the crime* or
> >
> > (2) aids or agrees to aid another person in planning or committing *the crime*.
>
> The word "aid" means all assistance whether given by words, acts, encouragement, support or presence. A person who is present at the scene and ready to assist by his or her presence is aiding in the commission of the crime. However, more than mere presence and knowledge of the criminal activity of another must be shown to establish that a person present is an accomplice.

*Id*. at 685 n.1 (emphasis added). There is no difference between the statute and the jury instruction, with the exception that the phrase "the crime" replaces the word "it" in the jury instruction.

## II. The panel majority does not follow binding Washington Supreme Court precedent and fails to give the proper deference to the Washington Court of Appeals, resulting in a misinterpretation of Washington accomplice liability law.

As federal courts, we must accept that Washington's state courts correctly applied Washington laws. *Bell v. Cone*, 543 U.S. 447, 455 (2005). The panel majority fails to follow the fundamental principle of our federal system "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *see also West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). This principle applied to federal habeas review of state convictions long before AEDPA. *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law"). A federal circuit court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law. *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous."). It does not matter that the state supreme court's statement of the law was dictum if it is perfectly clear and unambiguous. *Id.* at 76.

A determination of state law by a state appellate court is also binding in a federal habeas action. *See Hicks v. Feiock*, 485 U.S. 624, 629-30, 630 n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference). This is especially true where the highest court in the state has denied review of the lower court's decision. *Id.*; *see also West*, 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review

the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.").

This case illustrates exactly why these long-standing principles of deference and comity between the federal courts and the state courts exist — because interpreting state law is not a core function of the federal courts we lack the expertise to interpret state laws. More importantly, we lack authority to rewrite or reinterpret state law. "[O]nly state courts may authoritatively construe state statutes." *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 577 (1996); *see also Wainwright v. Goode*, 464 U.S. 78, 84 (1983) (per curiam) ("[T]he views of the state's highest court with respect to state law are binding on the federal courts."). It is axiomatic that "our Constitution establishes a system of dual sovereignty between the States and the Federal Government." *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991). The states possess inherent law-making authority — both with respect to statutory and common law. *See New York v. United States*, 505 U.S. 144, 161 (1992) (holding that Congress may not commandeer the legislative processes of the States). When a state statute or common law conflicts with the United States Constitution, we will declare the state law to be null and void, but we have no authority to alter or reinterpret state law.

By ignoring the deference normally given to state court decisions concerning state law, we misinterpret Washington's accomplice liability statute and find a federal due process violation based on a phantom conflict between Washington Supreme Court and appellate court cases. A closer review of Washington case law reveals that the state appellate court's opinion in this case is consistent with a long line of authority approving of the jury instruction actually used in this case, and that the Washington courts have consistently approved of the jury instruction.

A. *The panel majority comes to a conclusion directly contrary to Washington Supreme Court precedent and Washington state law.*

The Washington Supreme Court expressly adopted the jury instruction at issue as a correct statement of Washington's accomplice liability law in the very case the panel majority cites to overturn the jury instruction. After Sarausad's trial and direct appeal, the Washington Supreme Court clarified the limits of Washington's accomplice liability law (Wash. Rev. Code § 9A.08.020) in *State v. Roberts*, 14 P.3d 713, 734-36 (Wash. 2000).[1] The Washington Supreme Court held that a jury instruction that "improperly departed from the language of the statute" created the possibility that a jury could impose strict liability on an accomplice for any acts by the principal so long as the accomplice knew the principal would commit "a crime."[2] *Id.* at 735-36. The Washington Supreme Court

---

[1] The Washington Supreme Court also interpreted Washington's aggravated first degree murder statute (Wash. Rev. Code § 10.95.020), and held that "major participation by a defendant in the acts giving rise to the homicide is required in order to execute a defendant convicted solely as an accomplice to premeditated first degree murder." *Id.* at 733. This brought Washington law in conformity with the Supreme Court precedent from *Enmund v. Florida*, 458 U.S. 782, 784-798 (1982) and *Tison v. Arizona*, 481 U.S. 137, 158 (1987).

[2] The full text of the jury instruction in *Roberts*, as quoted in relevant part by the Washington Supreme Court read:

> You are instructed that a person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable. A person is legally accountable for the conduct of another person when he is an accomplice of such other person in the commission of *a crime*.

> A person is an accomplice in the commission of a crime, whether present at the time of its commission or not, if, with knowledge that it will promote or facilitate *its commission*, he either:

> (a) solicits, commands, encourages or requests another person to commit the crime; or

> (b) aids another person in planning or committing the crime.

*Roberts*, 14 P.3d at 735.

noted that RCW § 9A.08.020(3)(a) was patterned after Model Penal Code § 2.06(3)(a), and that the commentary required the accomplice to " 'have the purpose to promote or facilitate *the particular conduct that forms the basis for the charge*' and states, '*he will not be liable for conduct that does not fall within this purpose*.' " *Id*. at 735 (quoting Model Penal Code § 2.06 cmt. 6(b) (1985)). The Washington Supreme Court summarized its holding as follows:

> General knowledge of "the crime" is sufficient. Nevertheless, knowledge by the accomplice that the principal intends to commit "a crime" does not impose strict liability for any and all offenses that follow. Such an interpretation is contrary to the statute's plain language, its legislative history, and supporting case law.

*Roberts*, 14 P.3d at 736.

In reaching its conclusion that the jury instruction in *Roberts* was incorrect, the Washington Supreme Court distinguished and approved its prior reasoning in *State v. Davis*, 682 P.2d 883 (1984). The *Roberts* court noted that "the jury instruction in *Davis*, unlike the jury instruction here, copied exactly the language from the accomplice liability statute: it allowed for a conviction as an accomplice if the accomplice acted 'with knowledge that it will promote or facilitate the commission of the *crime* . . . .' "[3] *Roberts*, 14 P.3d at 736

---

[3]The jury instruction in *Davis* read as follows:

A person is an accomplice in the commission of a crime, if, with knowledge that it will promote or facilitate the commission of the crime, he or she either:

1) solicits, commands, encourages, or requests another person to commit the crime; or

2) aids or agrees to aid another person in planning or committing the crime.

(quoting jury instruction from *Davis*, 682 P.2d at 884-85); *State v. Allen*, 66 P.3d 653, 659 (Wash. Ct. App. 2003) ("*Roberts* expressly approved of the accomplice instruction in *State v. Davis* . . . ."). The *Roberts* court then reaffirmed "that *Davis* does not impose strict liability on accomplices for any and all crimes but merely reaffirms our long-standing rule that an accomplice need not have specific knowledge of *every element* of the crime committed by the principal, provided he has general knowledge of that specific crime." *Roberts*, 14 P.3d at 736. In a companion case, *State v. Cronin*, 14 P.3d 752, 757-58 (Wash. 2000), the Washington Supreme Court followed *Roberts*, but also cited with approval *Davis* to support the idea that under state law, criminal liability for an accomplice may be imposed only as long as the defendant has general knowledge of "the crime" for which he or she was eventually charged.

Under the facts of this case, the panel majority correctly finds sufficient evidence that Sarausad was at least an accomplice to second degree murder. There were numerous discussions concerning returning to Ballard High School to intimidate the rival gang. *Sarausad*, 479 F.3d at 680-81. Sarausad drove to pick up the gang member who had a gun. *Id.* at 682. Witnesses testified that Sarausad circled the high school several times, and one of the occupants of his car displayed a gun. *Id.* Furthermore, Sarausad drove by the steps of the school, slowed down, and waited for Ronquillo to fire four to ten shots before speeding away. *Id.* at 675, 682. This is not a case where Sarausad was convicted of second degree murder relating to his aiding and abetting a fraud scheme or a petty theft; the type of strict liability for any crime that the

---

The word "aid" means all assistance whether given by words, acts, encouragement, support or presence. A person who is present at the scene and is ready to assist by his or her presence is aiding in the commission of the crime.

*Davis*, 682 P.2d at 884-85.

Washington Supreme Court held was not contemplated by RCW § 9A.08.020. Thus, the distinction between "a crime" and "the crime" is not relevant in cases, such as this one, where the defendant was present and willing to facilitate the acts of the shooter. *See State v. Vincent*, 120 P.3d 120, 124-25 (Wash. Ct. App. 2005) (concluding passenger aided and abetted shooter in a drive by shooting).

No Washington court has ever disapproved of a jury instruction that tracked the exact language of section 9A.08.020. In fact, jury instructions identical to the one used in Sarausad's case have been expressly approved both before and after the *Roberts* decision.[4] In *State v. Moran*, 81 P.3d 122, 129-30 (Wash. Ct. App. 2003), the Washington Court of Appeals noted that the *defendant* proffered the exact same instruction used in Sarausad's case, and that "[t]he accomplice liability instruction Moran proposed, not the instruction the court gave, is the correct statement of the law of accomplice liability." The only instructions that Washington state courts have found deficient under *Roberts* have used the phrase "a crime" in a clause other than "A defendant is an accomplice in the commission of a crime . . . ."[5] In each of

---

[4]*See State v. O'Neal*, 109 P.3d 429, 441 (Wash. Ct. App. 2005) (analyzing this exact instruction and concluding that, "[h]ere, the instructional language at issue in *Cronin* does not exist because instruction 16 referred to 'the crime.' Instruction 16 did not misstate the law and Harry's argument fails"); *State v. Bockman*, 682 P.2d 925, 936-37 (Wash. Ct. App. 1984) ("There was no error as to the instruction concerning the mental state of the accomplice."); *see also Allen*, 66 P.3d at 659 (concluding there was no *Roberts* error where the instruction stated: "A person is an accomplice in the commission of the crime if, with knowledge that it will promote or facilitate the commission of the crime, he or she either: (1) solicits, commands, encourages, or requests another person to commit the crime; or (2) aids or agrees to aid another person in planning or committing the crime.").

[5]*See State v. Evans*, 114 P.3d 627, 634 (Wash. 2005) ("with the knowledge that it will promote or facilitate the commission of *a crime*" and "aids or agrees to aid another person in planning or committing *a crime*");

these cases, the "a crime" language in a clause explaining the required knowledge or acts of the defendant created the over-breadth error under state law.

Every decision examining the jury instruction given in Sarausad's case, as well as RCW § 9A.08.020, has determined that the instruction adequately and properly informs the jury of the intent necessary to find criminal liability under Washington law. The Washington Supreme Court expressly declared that the jury instruction given does not impose strict liability on defendants. *Roberts*, 14 P.3d at 736. Washington law clearly holds that the jury instruction in this case was a proper statement of Washington's accomplice liability law.

Yet the panel majority ignores both the statute and the cases approving of the jury instruction, in concluding that the Washington Supreme Court rejected a "very similar" instruction. *See Sarausad*, 479 F.3d at 690. The panel majority ignores the specific language from *Roberts*, 14 P.3d at 736, approving of the jury instruction used in Sarausad's case. *Id.* The majority takes the Washington Court of Appeals to task for *following* the Washington Supreme Court's decision in *Roberts* and approving the jury instruction language that copied RCW § 9A.08.020. *Id.* at 691. The Washington Court of Appeals, however, properly noted that the *Roberts* court relied upon language from the Model Penal Code commentary that an accomplice has "the purpose to promote or facilitate the *particular conduct that forms the basis for the charge*." *In re Sarausad*, 39 P.3d 308, 315 (Wash. Ct. App. 2001). Directly quoting the reasoning of the Washington Supreme Court is neither improper for a Washington Court of Appeals, nor an

---

*State v. Berube*, 79 P.3d 1144, 1147-49 (Wash. 2003) (same); *State v. Brown*, 58 P.3d 889, 893 (Wash. 2002) (same); *Cronin*, 14 P.3d at 756-57 (same); *Roberts*, 14 P.3d at 735 (after "a crime," "with knowledge that it will promote or facilitate *its commission*"); *In re Smith*, 73 P.3d 386, 392 (Wash. Ct. App. 2003) (same as *Evans*).

improper application of state law. Therefore, the panel majority's conclusions directly conflict with the Washington Supreme Court's and the Washington appellate courts' decisions about the scope of accomplice liability and the propriety of the jury instructions in Sarausad's case.

We must accept as binding the Washington Supreme Court's express approval of the instruction and the statute as accurate and proper statements of Washington's accomplice liability law. *Bradshaw*, 546 U.S. at 76-78. Having determined that there was no state law error from the use of the accomplice liability jury instruction in Sarausad's case, the question becomes whether RCW § 9A.08.020, by defining accomplice liability, violates the Due Process Clause by impermissibly shifting the burden of proof from the state to Sarausad.

    B.   *Defining the limits of Washington state's accomplice liability law does not impermissibly shift any burdens under Winship.*

The panel majority fails to cite to any authority that Washington's definition of accomplice liability violates a "fundamental principle, so as to limit the traditional recognition of a State's capacity to define crimes and defenses." *Clark v. Arizona*, ___ U.S. ___, 126 S. Ct. 2709, 2719, 165 L. Ed. 2d 842, 859 (2006); *see also Stanton v. Benzler*, 146 F.3d 726, 728 (9th Cir. 1998) (noting "a state is generally free within broad limits to define the elements of a particular offense" and shielding from habeas review a state law determination that arsenic trioxide is a poison as a matter of law). The Washington Supreme Court's pronouncement that the jury instructions approved in *Davis* are a correct statement that accomplice liability includes situations where the consequences are reasonably foreseeable (as opposed to imposing strict liability for any crime committed) should be conclusive. After all, the last word on the parameters of Washington's accomplice liability law "belongs neither to us nor to the dis-

trict court but to the supreme court of [Washington]." *R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 500 (1941). Even *Estelle v. McGuire,* 502 U.S. 62, 71-72 (1991), the case relied upon by the majority opinion, recognized "the fact that the [jury] instruction was allegedly incorrect under state law is not a basis for habeas relief." Just because the panel majority feels that the Washington Court of Appeals' interpretation of the accomplice liability law to allow for foreseeable consequences as opposed to strict liability is incorrect does not justify the grant of habeas corpus. *See Duckett v. Godinez*, 67 F.3d 734, 744 (9th Cir. 1995) ("The fact that a jury instruction is inadequate by Ninth Circuit direct appeal standards does not mean a petitioner who relies on such an inadequacy will be entitled to habeas relief from a state court conviction.").

This is not a case where the burden of proof was something other than beyond a reasonable doubt. *See In re Winship*, 397 U.S. 358, 364 (1970). Nor is this a case where the statute requires the defendant to prove a defense that negates an element of the crime or created a presumption concerning an element of the crime.[6] Rather, the burden remains on the habeas petitioner to show that accomplice liability limits are "so rooted in the traditions and conscience of our people as to be ranked as fundamental" in order to support a due process claim. *Montana v. Egelhoff*, 518 U.S. 37, 47 (1996) (internal quotation marks omitted). Sarausad has made no showing that some codification of complicity liability is a fundamental principle of criminal law, or deeply rooted, or that Washington's definition of accomplice liability somehow violates that principle. *See Patterson v. New York*, 432 U.S. 197, 201-02

---

[6]*See Francis v. Franklin*, 471 U.S. 307, 317 (1985) (holding mandatory, rebuttable presumptions regarding intent are unconstitutional); *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979) (invalidating Montana instruction stating that a defendant is presumed to intend the consequences of their actions); *Mullaney*, 421 U.S. at 703-04 (finding Maine statute that required defendants to prove heat of passion by a preponderance of the evidence unconstitutional).

(1977) (discussing fundamental principles for the purposes of due process claims).

The Supreme Court has defined the category of jury instructions that violate "fundamental fairness" very narrowly. *See Estelle*, 502 U.S. at 72-73 (citing *Dowling v. United States*, 493 U.S. 342, 352 (1990)). In fact, the Supreme Court stated, that "[i]f a State's courts have determined that certain statutory alternatives are mere means of committing a single offense, rather than independent elements of the crime, we simply are not at liberty to ignore that determination and conclude that the alternatives are, in fact, independent elements under state law." *Schad v. Arizona* 501 U.S. 624, 636 (1991). The Supreme Court in *Schad* rejected the idea that pursuing statutory, alternative theories of liability somehow impermissibly shifted the burden of proof from the state. *Id.* at 631-32.

The Washington Supreme Court has never interpreted RCW § 9A.08.020, or the jury instruction in *Davis*, as requiring a lesser standard of proof or creating a presumption concerning accomplice liability. In fact, the Washington Supreme Court reiterated that the prosecution is required to prove beyond a reasonable doubt an intent to aid, abet, facilitate, etc. the particular act that constitutes the crime under RCW § 9A.08.020. *Cronin*, 14 P.3d at 758.

Despite the panel majority's citation to *In re Winship*, it fails to explain, as our cases require, which burden concerning accomplice liability the challenged instruction shifted from the state to the defendant. *See Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005) (noting that equal protection inquiry must be in "reference to the elements of the criminal offense as set forth by state law"). The panel majority fails to cite any Supreme Court case holding that an overstatement of accomplice liability impermissibly shifts the burden of proof from the prosecutor to the defendant. The only case discussing theories of liability, *Schad v. Arizona*, 501 U.S. at 631-32,

rejected the idea that pursuing alternative theories of liability impermissibly shifted the burden of proof under *Winship* and *Mullaney*. The Washington Supreme Court's approval of the statute and the instruction as given in Sarausad's case, means that there was no *Winship / Mullaney* issue in this case because RCW § 9A.08.020 simply defined what was required to find accomplice liability. *See Stanton*, 146 F.3d at 728. Nothing about Washington's definition of accomplice liability, or the jury instruction concerning accomplice liability impermissibly shifted a burden from the prosecution to Sarausad. Accordingly, neither the Due Process Clause nor *Winship* and its progeny allow a federal court to hold that an ordinary definition of accomplice liability is unconstitutional.

C. *The prosecutor's arguments were not improper statements in the context of the trial and Washington state law.*

The panel majority makes much of the fact that the prosecutor argued an "in for a dime, in for a dollar" theory, insisting that the prosecutor's argument made the accomplice liability jury instruction unsound. *See Sarausad*, 479 F.3d at 684-85, 693. The majority fails to appreciate, however, that this was a proper argument concerning Washington's felony murder rule, an alternative theory charged against Sarausad. *See In re Sarausad*, 39 P.3d at 312 n.2 (noting all three defendants charged with the second degree felony murder of Melissa Fernandes); *see also State v. Wanrow*, 588 P.2d 1320, 1323-24 (Wash. 1978) (holding assault can serve as the predicate felony for a felony murder conviction).[7] Furthermore, the prosecutor's hypotheticals: a person holding the arms of the victim during an assault and the driver for a bank robbery were based on state appellate court decisions about aiding and

---

[7]*State v. Wanrow* was reversed by *In re Andress*, 56 P.3d 981, 998 (Wash. 2002). The Washington Legislature then clarified that assault could be a predicate felony for felony murder in 2003. *See* 2003 Wash. Adv. Leg. Serv. ch. 3 §§ 1-2.

abetting liability.[8] The prosecutor, by analogizing Sarausad's conduct of driving Ronquillo to the scene and slowing down to allow Ronquillo to fire at the victims to an accomplice who holds someone's arms while the principal beats the victim to death was not outside the bounds of accomplice liability. *See Roberts*, 14 P.3d at 735 (noting the Model Penal Code commentary that the accomplice must "have the purpose to promote or facilitate *the particular conduct that forms the basis for the charge*"). Finally, the prosecutor's arguments that Sarausad's participation as a driver throughout the act and afterward justified convicting him under Washington state law was a proper statement of aiding and abetting the murder. *See Vincent*, 120 P.3d at 124-25 (finding sufficient evidence of facilitation for passenger who served as a lookout and ducked so the driver could shoot out the passenger side window during a gang-related drive by shooting); *In re Smith*, 73 P.3d at 395, 397 (concluding defendant's willingness to continue driving co-defendant who robbed and kidnapped victims was sufficient evidence of facilitating the crimes).

---

[8]*See State v. Carothers*, 525 P.2d 731, 736 (Wash. 1974), disapproved on other grounds by *State v. Harris*, 685 P.2d 584, 587 (Wash. 1984) ("Whether he holds the gun, holds the victim, keeps a lookout, stands by ready to help the assailant, or aids in some other way, he is a participant."); *State v. Trout*, 105 P.3d 69, 75 (Wash. Ct. App. 2005) (finding sufficient evidence to convict as an accomplice where defendant knew about the plan to rob residents, armed the co-defendants, and was willing to provide backup even though he intended to rob a person who wasn't at the apartment); *State v. Haack*, 958 P.2d 1001, 1003-04 (Wash. Ct. App. 1997) ("Where several people beat up on a victim at the same time and the victim suffers great bodily injury from the beating, it may not be possible for the State to prove which person was responsible for inflicting the life-threatening injury; it is sufficient to convict all of the participants if the State can prove that the life-threatening injury was inflicted by one or more of the participants during the beating and that at least one of the participants intended to inflict great bodily harm.").

In *Davis*, the Washington Supreme Court went further, stating that "the law has long recognized that an accomplice, having agreed to participate in a criminal act, runs the risk of having the primary actor exceed the scope of the preplanned illegality." 682 P.2d at 886. The Washington Supreme Court has not overruled or questioned *Davis* on this point.

Nothing in the prosecutor's argument stated that the prosecutor did not need to prove every element of the crime. Rather, the prosecutor's arguments presented legitimate theories of liability under Washington law.[9] There is no evidence that the trial court failed to properly instruct the jury that the burden was on the prosecution to prove all the elements of accomplice liability beyond a reasonable doubt. The panel majority's discussion of the prosecutor's argument is taken out of context, fails to consider alternative theories, and is based on the false premise that the jury instruction was erroneous. As a result, the prosecutor's comments may not be used to bolster a weak argument that an instruction that was a correct statement of state law was somehow erroneous or unconstitutional.

The panel majority's misinterpretation of Washington law could have been avoided by giving the Washington courts the proper deference. The opinion conflicts with binding Supreme Court precedent mandating that we refrain from attempting to define elements of liability when the state supreme court has made a clear and unambiguous statement of what the applicable state law is. *Bradshaw*, 546 U.S. at 76-78; *see also Bains v. Cambra*, 204 F.3d 964, 972 (9th Cir. 2000) (stating standard of review and deference due to state supreme court cases interpreting state law). As a federal court, we should not expand our duties to rewrite state laws and jury instructions. Instead, we must defer to the specific pronouncements of the Washington Supreme Court, conclude that the jury instruction

---

[9]Under Washington law, "anyone who participates in the commission of a crime is guilty of the crime and should be charged as a principal, regardless of the degree or nature of his participation. Whether he holds the gun, holds the victim, keeps a lookout, stands by ready to help the assailant, or aids in some other way, he is a participant." *Carothers*, 525 P.2d at 736. Aiding or agreeing to aid a person to plan or commit the charged crime is sufficient to make a defendant liable as a principal. *See State v. McDonald*, 981 P.2d 443, 449-50 (Wash. 1999) (analyzing accomplice liability under Washington law and concluding that there is no proximate causation requirement).

in this case properly stated the scope of Washington's accomplice liability law, and reverse the district court's grant of habeas corpus.

### III.  The panel majority fails to properly apply AEDPA's deferential requirements.

Even if the Washington Court of Appeals reached an incorrect conclusion about state law, this would not support the issuance of a writ under AEDPA. It also conflicts with our post-AEDPA burden of proof decisions in *Lambert v. Blodgett*, 393 F.3d 943, 973-76 (9th Cir. 2004) (applying deferential AEDPA standards to determinations by the Washington state courts), and *Bruce v. Terhune*, 376 F.3d 950, 955-56 (9th Cir. 2004) (applying AEDPA standards to a claim that witness credibility jury instructions lessened the burden of proof).

### A.  *The AEDPA standards codified in 28 U.S.C. § 2254(d)(1) are mandatory and binding.*

The majority's failure to apply AEDPA's "contrary to" or "unreasonable application of" clearly established Federal law standard is clearly erroneous and conflicts with Supreme Court precedent mandating their application. AEDPA amended 28 U.S.C. § 2254 to restrict federal habeas corpus grants to state prisoners to cases where the state court proceedings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Section 2254(d)(1) creates two independent grounds for granting habeas relief to a state prisoner: (1) that the state court's determination was "contrary to" Supreme Court precedent, and (2) that the state court's decision was an "unreasonable application" of Supreme Court precedent. *See Williams*, 529 U.S. at 405 (approving of the Fourth Circuit's interpretation that § 2254(d)(1) contains two independent grounds for relief). Section 2254 sets forth a "highly deferential standard for eval-

uating state court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), that "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). The panel majority, however, fails to identify the specific ground for granting relief to Sarausad on his accomplice liability instruction claim. *Compare Sarausad*, 479 F.3d at 676-77 (stating the two-part standard) *with id.* at 689-94 (discussing the accomplice liability instruction without finding that the Washington Court of Appeals reached a result "contrary to" clearly established Supreme Court precedent or made an objectively "unreasonable application" of Supreme Court precedent).

    1.    The panel majority fails to make sufficient findings for granting habeas to support an argument that the Washington Court of Appeals decision was "contrary to" clearly established Federal law.

A finding that the state court decision was "contrary to" clearly established Supreme Court precedent, requires a determination that either "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]."[10] *Williams*, 529 U.S. at 405. The Supreme Court has never held that an accomplice liability statute, or any similar statute or jury instruction, was unconstitutional or impermissibly shifted the burden of proof from the state to the defendant. The Supreme Court has also not confronted facts that are materially indistinguishable from Sarausad's case. The majority's failure to identify any applicable precedent, or point to any part of the Washington Court of Appeals opinion that was directly contrary to Supreme Court precedent precludes reliance on the "contrary to" prong of § 2254(d)(1).

---

[10]Clearly established Federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *Id*. at 412.

2.  The panel majority failed to make sufficient findings to justify granting habeas because the state court decision was an unreasonable application of Federal law.

Assuming that the majority granted habeas based on an "unreasonable application" of Supreme Court precedent, then the majority's opinion fails to apply the Supreme Court's holding that "[u]nder the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The panel majority fails to conduct any analysis under the "unreasonable application" clause of 28 U.S.C. § 2254(d)(1). *See Sarausad*, 479 F.3d at 689-94. Because it does not contain any discussion of the legal principle involved, or why the Washington Court of Appeals' application of the principle was "objectively unreasonable," the majority's opinion fails to properly apply the AEDPA standards. *See Mitchell v. Esparza*, 540 U.S. 12, 15 (2003) (admonishing because "[t]he Court of Appeals, however, failed to cite, much less apply, this section"). The requirements of AEDPA deference are

binding directions to accord deference. *See Uttecht v. Brown*, 551 U.S. at ___, 127 S. Ct. 2218, 2224 (2007) (stating that the AEDPA requirements are "additional, and binding, directions to accord deference").

The Supreme Court in *Williams* gave specific directions to the federal courts on how to apply the "contrary to" and "unreasonable application" of Supreme Court precedent standards of AEDPA. Congress included that language specifically to prevent federal courts from granting habeas corpus by casually citing to broad language in Supreme Court opinions to justify overturning state court denials of habeas relief. The panel majority, however, does precisely that by pointing at broad principles from *In re Winship*, 397 U.S. at 364, *Sandstrom v. Montana*, 442 U.S. at 521, and *Estelle v. McGuire*, 502 U.S. at 72, and glossing over the analysis required by *Williams*, 529 U.S. at 405, 409-11. *See Sarausad v. Porter*, 479 F.3d at 683-84, 689-94 (failing to make findings under the two prongs of AEDPA). The findings and analysis under both prongs of AEDPA stated in *Williams* are mandatory, not optional. We should not be so cavalier with the application of AEDPA when the Supreme Court has given us specific and detailed instructions on how to apply the deferential standards.

    3.   The Washington Court of Appeals' decision was objectively reasonable.

The majority opinion essentially argues that the jury instruction in this case was ambiguous because the Washington courts have come to conflicting results concerning the jury instructions for accomplice liability. *See Sarausad v. Porter*, 479 F.3d at 692. Sarausad has not, and cannot, demonstrate that the state appellate court's decision was objectively unreasonable.

As noted above, the Washington Supreme Court drew a clear line between permissible jury instructions that scrupu-

lously follow RCW § 9A.08.020 and impermissible jury instructions that create the inference that a defendant can be strictly liable for any subsequent offense committed by his co-defendants if he aids and abets them in the commission of any crime.[11] *Roberts*, 14 P.3d at 736. Given the Washington Supreme Court's language expressly approving of *Davis* and the jury instruction that uses "the crime," instead of "a crime," the Washington Court of Appeals was well within the bounds of reason to conclude that the jury instruction in this case was an accurate statement of the law.[12] *See In re Sarausad*, 39 P.3d at 318. Subsequent cases following the court of appeals' reasoning in this case and concluding that jury instructions that follow the language of RCW § 9A.08.020 are correct, demonstrate that the state court's approach was objectively reasonable. *O'Neal*, 109 P.3d at 441; *Allen*, 66 P.3d at 659. Furthermore, the state court of appeals could properly hold that the limited nature of the prosecutor's argument in the circumstances of this case were within the bounds of Washington's accomplice liability law based on prior case law. *See Carothers*, 525 P.2d at 736; *Haack*, 958 P.2d at 1003-04. Nothing about the state court of appeals' decision makes it objectively unreasonable, much less an objectively unreasonable application of Supreme Court precedent. The Supreme Court has never disapproved of the Model Penal Code concerning accomplice liability, or any statute similar to RCW § 9A.08.020 as unconstitutionally ambiguous.[13]

---

[11]Of course correct statements of state law and the burden of proof are not constitutionally erroneous. *See Bruce*, 376 F.3d at 956 (concluding that instructions that comport with *Winship* and state law were not constitutionally erroneous).

[12]Considering the court of appeals relied upon the Washington Supreme Court's own language from *Roberts*, it is not surprising that the state supreme court refused to review the decision.

[13]The cases cited by the panel majority concerning ambiguous jury instructions concerned federal statutes on direct review, not state interpretations of state statutes. *See Liparota v. United States*, 471 U.S. 419, 424 (1985) (discussing 7 U.S.C. § 2024(b)(1)); *Staples v. United States*, 511 U.S. 600, 604 (1994) (26 U.S.C. § 5861(d)); *Ratzlaf v. United States*, 510 U.S. 135, 149 (1994) (31 U.S.C. §§ 5322(a) and 5324(3)); *United States v. Speach*, 968 F.2d 795, 796 (9th Cir. 1992) (42 U.S.C. § 6928(d)(1)).

This case was not before us upon direct review. We were required under *Williams*, 529 U.S. 409-413, to analyze whether the court of appeals identified a correct principle under Supreme Court precedent but applied the principle in an objectively unreasonable manner. The panel majority failed to conduct this inquiry, and even under state law, cannot show that the state appellate court's analysis was objectively unreasonable. AEDPA was designed specifically to avoid unfettered review of the reasonableness of state court decisions. Sarausad has not demonstrated any objectively unreasonable application of Supreme Court precedent, therefore, under AEDPA, our duty was to deny his petition.

B. *The majority's opinion engages in improper de novo review without giving the Washington Court of Appeals' legal conclusions about state law any deference in violation of Williams v. Taylor.*

The majority's opinion improperly analyzes the jury instruction de novo and simply concludes that the Washington Court of Appeals' decision was incorrect, instead of identifying what legal principle the state court applied in an "objectively unreasonable" manner. By setting aside the Washington Court of Appeals' legal conclusion that the jury instruction given in Sarausad's case was a proper statement of Washington law, the panel majority conflicts with this court's opinion in *Lambert v. Blodgett*, 393 F.3d at 975-76, because it fails to find (and, as discussed above cannot find) that the state courts' legal conclusions were objectively unreasonable or contrary to established Supreme Court precedent. Rather, the panel majority proceeds to undertake what amounts to a direct review of the allegedly improper jury instruction under *Estelle*, 502 U.S. at 71-72. *See Sarausad*, 479 F.3d at 689-94. The Supreme Court has reiterated time and time again after *Williams*, that a federal court cannot grant habeas relief by undertaking a de novo review and reaching a different conclusion than the state courts. *See Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004); *Woodford*, 537 U.S. at 24-25. Addition-

ally, the majority's approach is improper because "[t]he fact that a jury instruction is inadequate by Ninth Circuit direct appeal standards does not mean a petitioner who relies on such an inadequacy will be entitled to habeas relief from a state court conviction." *Duckett*, 67 F.3d at 744.

In this case, the majority, after independent review, simply disagrees with the Washington Court of Appeals, and fails to conduct a proper AEDPA based inquiry into the reasonableness of the legal determinations concerning the propriety of the jury instruction under Washington law.[14] The majority's failure to recognize that the Washington Supreme Court approved of the instruction given in this case as a correct statement of Washington law was directly contrary to Supreme Court precedent. *See Bradshaw*, 546 U.S. at 78 (holding that failure to credit Ohio Supreme Court's pronouncement that the doctrine of transferred intent applied to felony murder by reaching the opposite conclusion was error). By deciding to conduct a de novo review of the jury instruction and Washington's accomplice liability law instead of applying the deferential AEDPA standards, the panel majority compounds its mistake and reaches a result contrary to Supreme Court and our own precedents.

## CONCLUSION

This case shows a lack of respect for the state courts that violates the principles of federalism and our traditional deference to the states' highest courts to interpret state law. The panel majority misinterprets Washington's accomplice liability statute and Washington Supreme Court case law concerning the accomplice liability jury instructions given in

---

[14]Even if the Washington Court of Appeals was wrong in its application of Washington law, writs of habeas corpus are not available for alleged errors in the interpretation or application of state law. *Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993) (quoting *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985)).

Sarausad's case. As a result, the entire premise of the panel majority's affirmance of the grant of habeas corpus is flawed. In addition, the panel majority's failure to follow the Supreme Court's instructions on how to apply AEDPA compounds its initial mistake in attempting to interpret Washington's accomplice liability statute. Finally, the panel majority's approach to the Washington Court of Appeals' harmless error analysis conflicts with our prior approach in *Medina v. Hornung*, 372 F.3d 1120, 1126 (9th Cir. 2004), and the Supreme Court's mandate in *Mitchell v. Esparza*, 540 U.S. at 17. Therefore, I dissent from our decision not to rehear this case en banc.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2007 Thomson/West.