# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47136-1-II |
| Respondent, | |
| v. | |
| DALE HARVEY OYA III, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, J. — A jury acquitted Dale Harvey Oya III of one count of second degree assault but found him guilty of one count of failing to remain at an injury accident (hit and run) and one count of attempting to elude pursuing police (eluding) with a sentence enhancement for endangering another person. Oya appeals his conviction and sentence enhancement. We hold that (1) there was sufficient evidence to support his convictions and the enhancement, (2) any confrontation clause violation was harmless, (3) counsel was not ineffective, and (4) the trial court did not abuse its discretion by denying Oya's motion to sever. We affirm Oya's convictions and sentence.

FACTS

## I. BACKGROUND

On February 4, 2014, Oya stopped at a gas station with his girlfriend, Angel Boyd, and her friend.[1] Boyd and Oya argued and continued to do so after Boyd and her friend stepped out of the van at the gas station. Boyd stood near the van when Oya drove it forward, hit her on the side of her body, and knocked her to the ground. Oya drove away, turned around, and drove back to Boyd, stopped, and asked Boyd to get back in the van to come with him. Boyd refused and told Oya to leave. Oya left. Boyd's leg was injured. There were several witnesses to this event. Police were unable to locate the van or Oya that evening.

On February 7, Officer Douglas Walsh and Officer Travis Waddell saw the van while on patrol. The officers attempted to initiate a traffic stop. After initially stopping, the van drove off. Both officers followed the van with their lights and sirens on. The van either slowed or stopped, and the passenger, Jordan George, jumped out. Officer Walsh continued to pursue the van, which accelerated to 70 to 75 MPH, then slowed to 15 to 20 MPH before it stopped. Oya exited the van and was arrested.

## II. PROCEDURAL FACTS AND MOTION TO SEVER

The State charged Oya with second degree assault, hit and run, and eluding. The eluding charge also alleged a sentencing enhancement that Oya endangered one or more persons.

Before trial, Oya moved to sever the eluding charge from the other two counts. Defense counsel made several arguments in favor of severance.

---

[1] Boyd testified that her friend "Arlene" was with them that day and witnessed the events. Arlene did not testify.

Oya made an offer of proof that he would testify that (1) he did not intend to get away from the police, (2) he intended to park his van so it would not get impounded because he was driving without a license, (3) he did not feel he was driving recklessly, and (4) he did not put people in danger. The trial court stated that it could not conclude that admitting evidence about the eluding in a joined trial with the assault and hit and run charges was more prejudicial than probative. The trial court added that the charges were all related because "the action on that date tends to show what his intent was on the prior date" if the State's version of the case proved to be true. 2 Report of Proceedings (RP) at 57.[2] The trial court concluded that that question was for the jury to decide and denied the motion to sever.

Later, Oya renewed his motion to sever the eluding charge from the assault and the hit and run charges. Oya made the same arguments as before but added that his testimony was the only way to challenge the sentencing enhancement. He did not make an offer of proof as to what facts he would testify to about the risk of harm to George. The trial court noted that Oya could testify, but if he wished to testify about his intent during eluding, that may implicate the assault and hit and run charges, in which case Oya would have to run the risk of cross-examination about those charges, but that that is the "choice every defendant has." 4 RP at 449. The trial court concluded that Oya's desire to testify about one count was not a proper basis to sever and denied the motion.

### III. TRIAL

Trial began November 13 and testimony lasted two days. Eight witnesses testified for the State. Boyd testified that she and Oya lived together, have a child together, and share the van. She

---

[2] There is no written order denying the motion to sever in our record.

testified that she and Oya argued in the van because she was using methamphetamine and heroin that day. Boyd found herself on the ground at the gas station, but did not remember how she got there. Oya was crying, told her to get back in the van, and offered to help her get in though Boyd could not remember how he offered. She testified that she was high, not injured, but told Boyd that she could not get up to get in the van. Boyd heard people talking on phones and she told Oya to leave because the police were coming. Oya left.

Officers Jimmy Welsh and Daniel Bortle testified about what they saw when they arrived at the gas station. Officer Welsh testified that when he arrived, Boyd was sitting on the ground, crying, holding her leg in pain. He observed swelling on her knee and ankle. Boyd told Welsh that she was walking towards the gas station when the van revved up and hit her when she turned around. Boyd is the registered owner of the van. Officer Bortle testified that when he arrived, Boyd held her leg and said it hurt. Officer Bortle also observed swelling on her ankle.

Gabriella Lopez testified that while driving across the street from the gas station, she saw Oya and Boyd arguing. Lopez saw Boyd fall to the ground and get hit by the van.[3] At the gas station, Lopez found Boyd on the ground, sobbing.[4] Lacee Sharp testified that she saw Oya and Boyd arguing from across the street from the gas station. The van pulled forward as if to go around Boyd, and Lacee Sharp did not see the van contact Boyd, but saw Boyd on the ground crying after

---

[3] Lopez further testified that she saw the van run over Boyd's legs with two tires, back up, and run over her legs again and then run over her entire body with all four wheels. This testimony was not consistent with the testimony of any other witness's report of events or report of the severity of Boyd's injuries.

[4] At the conclusion of Lopez's testimony and before Officer Walsh testified, Oya renewed his previously denied motion to sever the assault and the hit and run from the eluding without making additional argument. The trial court denied the motion.

the van moved. Connie Sharp, Lacee Sharp's mother, saw Oya return to Boyd, who was on the ground, stop the van, and speak to Boyd from the van for a couple of minutes before Oya left. Boyd was helped up from the ground by her friend Arlene and limped to the gas station store. Police were unable to locate Oya that evening.

On February 7, while on patrol, Officer Walsh saw the van. Officers Walsh and Waddell followed Oya in the van with their emergency lights on. The van stopped and Officer Waddell told Oya to exit his van. Oya took off; Officer Walsh pursued the van with his lights and sirens on. According to Officer Walsh, Oya made an "abrupt" stop and George jumped out. 3 RP at 329. Oya turned on to Portland Avenue at an estimated 30 to 40 MPH, then accelerated to 70 to 75 MPH, then slowed again to 15 to 20 MPH before stopping. There were no near collisions with persons or property and Oya did not make any u-turns or sudden bolts down alleys to avoid the police. There was "[l]ight to medium" traffic throughout the pursuit. 3 RP at 318. There were a few spots of ice on the road, but it was otherwise dry. The entire pursuit lasted between half a mile to three-quarters of a mile.

Officer Waddell testified similarly to Officer Walsh, but added that the first time Oya stopped, it was in the middle of a one-way road. Officer Waddell exited his car and drew his gun to a "low ready" position and pointed it off to his side at the ground. 4 RP at 426. Oya looked back at the police officers and then drove off again. Officer Waddell was directly behind Oya, and Officer Walsh was behind Officer Waddell. According to Officer Waddell, Oya did not stop, but was driving 15 to 20 MPH when George leaped out. George tried to land on his feet, but was going too fast, so he rolled on the ground. Officer Waddell placed George in wrist restraints. Officer Waddell testified that George was "very flustered, excited, and seemed stressed." 4 RP at 411.

5

The State then asked Officer Waddell what George said. Oya objected on the basis of hearsay. The trial court overruled the objection because the State established that George was excited when he spoke. George said that "[Oya], basically, knew that the police were behind him because he said something to the effect that he knew that he was going to get stopped." 4 RP at 412. The State asked if George gave a reason why he jumped from the car, and Officer Waddell replied, "He jumped from the car because he didn't want to be involved. He didn't realize that Mr. Oya was wanted by police or anything like that." 4 RP at 412. The State rested after Officer Waddell's testimony. No defense witnesses testified, and the defense rested.

IV. JURY INSTRUCTIONS, CLOSING ARGUMENT, AND VERDICT

The trial court gave an instruction on the lesser-included offense of failure to obey a police officer in case the jury found Oya's driving was not reckless. The trial court also instructed the jury that "[a] separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." Clerk's Papers (CP) at 50. Jury instruction 14 states in relevant part,

> To convict the defendant of hit and run, *each of the following elements* of the crime must be proved beyond a reasonable doubt:
> . . . .
> (4) That the defendant *failed* to satisfy his obligation to fulfill *all* of the following duties:
> *(a) Immediately stop the vehicle at the scene of the accident or as close thereto as possible.*
> (b) Immediately return to and remain at the scene of the accident until all duties are fulfilled.
> (c) Give his name, address, insurance company, insurance police [sic] number and vehicle license number and exhibit his driver's license to any person struck or injured, and
> (d) Render to any person injured in the accident reasonable assistance, including the carrying or making of arrangements for the carrying of such person to a physician or hospital for medical treatment if it is apparent that such treatment

6

is necessary or such carrying is requested by the injured person or on his or her behalf.

CP at 61 (emphasis added).

During closing argument, the State argued regarding the eluding charge and the special verdict that "[t]he person who is endangered here is the passenger." 5 RP at 484. The State also argued that Oya knowingly attempted to elude police because he knew "from earlier" that he had "injured his girlfriend [and] left her at the gas station" and noted "he fled" on both days. 4 RP at 485-86.

The jury acquitted Oya of assault but found him guilty of hit and run and eluding. The jury also found that another person was threatened with physical injury or harm during the eluding. Oya received the maximum sentence of 60 months for the hit and run and 29 months for the eluding, plus 12 months and a day for the enhancement to run concurrently.

ANALYSIS

I. SUFFICIENCY OF THE EVIDENCE

Oya argues that there is insufficient evidence to support the hit and run conviction, the eluding conviction, and the enhancement that he endangered George during the eluding. We disagree.

A. STANDARD OF REVIEW

In a claim of insufficient evidence, we view the evidence in the light most favorable to the State and review whether any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). Thus, we admit the truth of the State's evidence and all inferences that can reasonably be drawn therefrom. *State v. Cannon*, 120 Wn. App. 86, 90, 84 P.3d 283 (2004). We do not review

credibility determinations which are left to the fact finder. *Homan*, 181 Wn.2d at 110.

Circumstantial evidence is not considered any less reliable than direct evidence. *State v.*

*Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

## B. HIT AND RUN

Oya makes two arguments that there was insufficient evidence to support his hit and run

conviction.[5]  Oya's arguments fail.

The hit and run statute states,

(1)  A driver of any vehicle involved in an accident resulting in the injury to or death of any person or involving striking the body of a deceased person *shall immediately stop such vehicle at the scene of such accident* or as close thereto as possible but shall then forthwith return to, *and in every event remain at, the scene of such accident until he or she has fulfilled the requirements of subsection (3)* of this section . . .

. . . .

(3)  Unless otherwise provided in subsection (7) of this section the driver of any vehicle involved in an accident resulting in injury to or death of any person, or involving striking the body of a deceased person, or resulting in damage to any vehicle which is driven or attended by any person or damage to other property shall give his or her name, address, insurance company, insurance policy number, and vehicle license number and shall exhibit his or her vehicle driver's license to any person struck or injured or the driver or any occupant of, or any person attending, any such vehicle collided with *and shall render to any person injured in such accident reasonable assistance, including the carrying or the making of arrangements for the carrying of such person to a physician or hospital for medical treatment if it is apparent that such treatment is necessary*.

RCW 46.52.020 (emphasis added).

---

[5] Oya also argues that his relationship with Boyd obviated the need for him to give her his contact and insurance information pursuant to *State v. Teuber*, 19 Wn. App. 651, 577 P.2d 147 (1978). The State concedes that Oya need not have offered Boyd his contact information pursuant to this case.  In *Teuber*, the drivers involved in a hit and run were neighbors who knew each other, which the court found obviated the need for the drivers to exchange contact information.  19 Wn. App. at 657.  Here, Boyd was Oya's girlfriend, they lived and have a child together, and they shared the van registered in Boyd's name.  Thus, we accept the State's concession.

The hit and run "to convict" instruction stated in part,

(4)  That the defendant *failed* to satisfy his obligation to fulfill *all* of the following duties:
(a)  *Immediately stop the vehicle at the scene of the accident or as close thereto as possible.*
(b)  Immediately return to and remain at the scene of the accident until all duties are fulfilled.
(c)  Give his name, address, insurance company, insurance police [sic] number and vehicle license number and exhibit his driver's license to any person struck or injured, and
(d)  Render to any person injured in the accident reasonable assistance, including the carrying or making of arrangements for the carrying of such person to a physician or hospital for medical treatment if it is apparent that such treatment is necessary or such carrying is requested by the injured person or on his or her behalf.

CP at 61.  This instruction matches 11A *Washington Practice:  Washington Pattern Jury Instructions:  Criminal* 97.02, at 362 (3d ed. 2008) (WPIC).[6]

1.      LAW OF THE CASE DOCTRINE DOES NOT APPLY HERE

First, Oya relies on *State v. Hickman*, 135 Wn.2d 97, 954 P.2d 900 (1998), to argue that the to-convict instruction is the law of the case and that the to-convict instruction's grammatical structure obligated the State to prove that Oya failed to stop at the scene of the accident and because he did stop, the State failed to meet its burden.  But this argument is unpersuasive.  *Hickman* sets out the law of the case doctrine and states that where any *additional* elements are added to the to-convict instructions and the State does not object, that additional element must be proved beyond a reasonable doubt.  135 Wn.2d at 99.  However, the to-convict instruction here is identical to 11A WPIC 97.02.  And that WPIC follows the plain language of the hit and run statute, RCW 46.52.020.  There were no additional elements added to the to-convict instruction here.  *Hickman*

---

[6] Washington has adopted pattern jury instructions to assist trial courts.  *State v. Bennett*, 161 Wn.2d 303, 307, 165 P.3d 1241 (2007).

does not support Oya's contention that the to-convict instruction obligated the State to prove an additional element.

A plain reading of RCW 46.52.020 shows that it is the State's burden to show that a defendant failed to perform one or more of the required actions. Oya was required not only to stop, but to remain at the scene and render Boyd reasonable assistance, including getting her to or making arrangements to get her to a physician or hospital for medical treatment if it is apparent that such treatment is necessary. RCW 46.52.020(3). Although Oya stopped briefly, he left the scene and did not render aid. Thus, Oya's argument that the State presented insufficient evidence simply because the State failed to prove he did not stop, is unpersuasive.

2.      OYA'S CLAIM THAT HE OFFERED AID

Second, Oya argues that he offered to render aid to Boyd, but Boyd told him to leave. This argument is also unpersuasive because RCW 46.52.020(3) requires the driver in a hit and run to do more than *offer* aid and provides no exceptions for an injured victim who declines aid.

Again, RCW 46.52.020(3) directs that the driver "shall render" reasonable assistance, including the carrying or the making of arrangements for the carrying of such person to a physician or hospital for medical treatment if it is apparent that such treatment is necessary. And sufficient evidence supports that it was apparent that medical treatment was necessary where Boyd told Oya that she could not get up to get in the van to leave with him, she was limping when helped up, and the police officers testified that her leg was visibly swollen. Oya did not get out of the van to help Boyd or stay to render aid. And although Oya argues that he stopped to offer Boyd help, Boyd testified that she could not remember how he offered to help her get in the van, and the jury could have inferred that he made no such offer.

Viewing the evidence in the light most favorable to the State, we conclude that any rational trier of fact could find the essential elements of the hit and run charge beyond a reasonable doubt.

## C. ATTEMPTING TO ELUDE POLICE PURSUIT

Oya argues that there was insufficient evidence to prove that he drove recklessly to support his conviction for attempting to elude a pursuing police vehicle. We disagree.

The attempting to elude statute states,

(1) Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a *reckless manner* while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony.

RCW 46.61.024 (emphasis added).

Driving "'in a reckless manner'" means "'driving in a rash or heedless manner, indifferent to the consequences.'" *State v. Roggenkamp*, 153 Wn.2d 614, 622, 106 P.3d 196 (2005) (quoting *State v. Bowman*, 57 Wn.2d 266, 270, 271, 356 P.2d 999 (1960)). Exceeding the speed limit is prima facie evidence of reckless operation of a motor vehicle. RCW 46.61.465. But courts consider evidence in addition to speed and consider how far beyond the speed limit a defendant is driving before making a finding of recklessness. *See State v. Amurri*, 51 Wn. App. 262, 267, 753 P.2d 540 (1988) (holding evidence that driver exceeded speed limit while passing vehicle on the right, on wet, narrow, gravel shoulder was prima facie evidence of reckless operation of motor vehicle); *State v. Randhawa*, 133 Wn.2d 67, 78, 941 P.2d 661 (1997) (holding that a finding of reckless driving cannot always be inferred from evidence of exceeding a speed limit alone, the court must consider how far beyond the speed limit the defendant drove).

Here, the State offered the testimony of Officers Walsh and Waddell to support the eluding charge. First, the officers attempted to initiate a traffic stop. After initially stopping, the van drove off. Both officers followed the van with their lights and sirens on. Officer Walsh testified that there was light to medium traffic during the pursuit and some ice on the road. Officer Waddell testified that the first time Oya stopped, he did not pull over but stopped in the middle of a one-way street. Officer Walsh also estimated that Oya exceeded a 35 MPH speed limit and drove 70 to 75 MPH during the pursuit before stopping. And Officer Waddell testified that Oya did not stop to let George exit the van, but only slowed to 15 to 20 MPH such that George rolled on the ground after he leaped from the van.

Viewing this evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found that Oya drove in a rash or heedless manner, indifferent to the consequences, establishing the essential element of reckless driving beyond a reasonable doubt.

### D. ENDANGERMENT ENHANCEMENT

Oya next argues that there was insufficient evidence to support a sentencing enhancement based on endangerment to George during the eluding. Again, we disagree.

The special allegation of endangerment by eluding a police vehicle applies when "sufficient admissible evidence exists, to show that one or more persons other than the defendant or the pursuing law enforcement officer were threatened with physical injury or harm by the actions of the person committing the crime of attempting to elude a police vehicle." RCW 9.94A.834(1).

Here, both officers followed the van with their lights and sirens on. Officer Waddell drew his gun the first time he stopped Oya while George was still in the van. He kept the gun at "low ready," meaning it was pointed off to his side at the ground. 4 RP at 426. The van drove off again.

12

While the van was moving at 15 to 20 MPH, George leaped out and tried to land on his feet but was going too fast so he rolled on the ground. Oya's actions in refusing to stop for pursuing police vehicles, as just described, jeopardized the safety of George. Viewing this evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found the essential elements of the endangerment enhancement beyond a reasonable doubt.

## II. CONFRONTATION CLAUSE NOT VIOLATED

Oya argues that his confrontation clause right was violated by the admission of George's statement. Oya further argues that he was prejudiced by the admission of George's statements because the statements inferred that he had a guilty state of mind with respect to all three charges. We find that even if Oya's confrontation clause rights were violated, the error was harmless.

Alleged confrontation clause violations are subject to the constitutional harmless error test. *State v. Vincent*, 131 Wn. App. 147, 154-55, 120 P.3d 120 (2005). "A confrontation clause error is harmless if the evidence is overwhelming and the violation so insignificant by comparison that we are persuaded, beyond a reasonable doubt, that the violation did not affect the verdict." *Vincent*, 131 Wn. App. at 154-55. "Considerations include the importance of the witness's testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case." *Vincent*, 131 Wn. App. at 155.

Here, even assuming a violation of Oya's right of confrontation, under these circumstances any error is harmless. Here, George said that "[Oya], basically, knew that the police were behind him because he said something to the effect that he knew that he was going to get stopped." 4 RP

13

at 412. The State asked if George gave a reason why he jumped from the car, and Officer Waddell replied, "He jumped from the car because he didn't want to be involved. He didn't realize that Mr. Oya was wanted by police or anything like that." 4 RP at 412. As Oya argues, these statements by George may have further implicated a guilty conscience to Oya about the events related to the assault and the hit and run charges and could have been used to show that he knowingly attempted to elude the police on February 7.

But as discussed above, strong evidence supported the eluding and the hit and run charges such that this testimony was not important to the State's case. *Vincent*, 131 Wn. App. at 154-55. George's testimony was likely cumulative evidence of Oya's guilty conscience regarding the hit and run and assault charges given that the State introduced the testimony of several witnesses that Boyd had apparent injuries and Oya fled the scene on February 4 without rendering her reasonable aid. And George's testimony was not necessary to show that Oya knowingly eluded police: Oya was followed by two patrol cars with their sirens and emergency lights on; at one point he looked back and saw the officers, stopped, but then continued to drive. Oya contests only that he drove recklessly, and George's statements do not speak to the nature of Oya's driving.

We conclude that any confrontation clause error was harmless because the untainted evidence was overwhelming and the violation so insignificant by comparison that we are persuaded beyond a reasonable doubt that Oya would have been convicted of the eluding and hit and run charges without the admission of George's statements.

III. COUNSEL WAS NOT INEFFECTIVE

Oya briefly argues that his counsel was ineffective for failing to object to George's testimony on the basis of Oya's confrontation clause rights because the trial court would have

sustained the objection. Because Oya cannot show that he was prejudiced, his ineffective assistance of counsel claim fails.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the United States Supreme Court set forth a two-prong inquiry for reversal of a criminal conviction based on ineffective assistance of counsel. 466 U.S. at 687. Under the *Strickland* test, the defendant bears the burden to show that (1) counsel's performance was deficient and (2) the attorney's deficient performance prejudiced the defense. 466 U.S. at 687. Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim. *Strickland*, 466 U.S. at 700.

Prejudice exists if there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

As discussed above, even if the admission of George's statements violated Oya's confrontation rights, the State had other strong evidence to support both of his convictions and, thus, there is no reasonable probability that, except for counsel's failing to object on confrontation grounds, the result of the proceeding would have been different. *McFarland*, 127 Wn.2d at 335. Thus, Oya has not shown prejudice from his counsel's performance. *McFarland*, 127 Wn.2d at 335. We conclude that Oya's ineffective assistance of counsel claim fails.

IV.  SEVERANCE

Oya argues that the trial court abused its discretion when it denied his motions to sever the assault and the hit and run charges from the eluding charge such that reversal and remand for a new trial is required.  We disagree.

A.  STANDARD OF REVIEW AND RULES OF LAW

We reverse a trial court's refusal to sever counts only for a manifest abuse of discretion. *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994).  A trial court abuses its discretion when it bases its decision on untenable or unreasonable grounds.  *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

CrR 4.3 permits a court to join two or more offenses in a charging document when the offenses are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.  CrR 4.3(a)(2).  The court rules mandate that properly joined offenses shall be consolidated for trial unless the court orders severance under the applicable rule. CrR 4.3.1.  CrR 4.4(b) directs the court to grant severance if it concludes that severance will promote a fair determination of the defendant's guilt or innocence of each offense.  Separate trials are disfavored in Washington.  *State v. Emery*, 174 Wn.2d 741, 752, 278 P.3d 653 (2012).

In examining whether a trial court abused its discretion by refusing to sever offenses, our courts have recognized that joinder of offenses may prejudice a defendant in that "'(1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would

not so find.'" *State v. Bythrow*, 114 Wn.2d 713, 718, 790 P.2d 154 (1990) (quoting *State v. Smith*, 74 Wn.2d 744, 755, 446 P.2d 571 (1968), *vacated in part*, 408 U.S. 934, 92 S. Ct. 2852, 33 L. Ed. 2d 747 (1972), *overruled on other grounds by State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975)). Oya bears the burden to establish a manifest, specific prejudice that outweighs a concern for judicial economy. *Bythrow*, 114 Wn.2d at 718.

## B. PREJUDICE AND MITIGATION

Four factors mitigate potential prejudice to the accused, none of which is dispositive. *State v. McDaniel*, 155 Wn. App. 829, 860, 230 P.3d 245 (2010). "In determining whether the potential for prejudice requires severance, a trial court must consider (1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial." *Russell*, 125 Wn.2d at 63.

### 1. STRENGTH OF THE EVIDENCE

Oya argues that the State's case was not strong on any of the counts. We disagree.

We first review the relative strength of the State's case for each count. *Russell*, 125 Wn.2d at 64. "When the State's evidence is strong on each count, there is no necessity for the jury to base its finding of guilt on any one count on the strength of the evidence of another." *Bythrow*, 114 Wn.2d at 721-22. Thus, this factor mitigates the potential prejudice that the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which his guilt of the other crimes charged is found or that the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. *See Bythrow*, 114 Wn.2d at 721-22.

"[T]he elements of felony hit and run require proof of (1) death or injury to a person or damage to an attended vehicle, and (2) failure of the driver of the vehicle involved in the accident to stop his vehicle and return to the scene in order to provide his name, address, vehicle license number and driver's license and to render reasonable assistance to any person injured in such accident." *State v. Bourne*, 90 Wn. App. 963, 969, 954 P.2d 366 (1998).

The elements of the crime of attempting to elude a police vehicle are fixed in RCW 46.61.024(1) that states,

> Any driver of a motor vehicle who willfully fails or refuses to immediately bring his or her vehicle to a stop and who drives his or her vehicle in a reckless manner while attempting to elude a pursuing police vehicle, after being given a visual or audible signal to bring the vehicle to a stop, shall be guilty of a class C felony. The signal given by the police officer may be by hand, voice, emergency light, or siren. The officer giving such a signal shall be in uniform and the vehicle shall be equipped with lights and sirens.

Driving "'in a reckless manner means driving in a rash or heedless manner, indifferent to the consequences.'" *State v. Roggenkamp*, 153 Wn.2d 614, 622, 106 P.3d 196 (2005) (internal quotation marks omitted) (quoting *Bowman*, 57 Wn.2d at 270, 271). Exceeding the speed limit is prima facie evidence of reckless operation of a motor vehicle. RCW 46.61.465. But exceeding the speed limit alone is not sufficient to find reckless driving. *See Randhawa*, 133 Wn.2d at 78 (holding a finding of reckless driving cannot always be inferred from evidence of speed).

Oya's first allegation of prejudice is that because the State's case was not strong on any counts, the "sensational nature" of the assault charge prejudiced the jury against Oya, presumably for both convictions though he does not specify. Br. of Appellant at 16. But the jury found Oya not guilty of the assault, so it is hard to see how the alleged "sensational nature" of the assault charge prejudiced Oya. Also, this general allegation of prejudice does not meet Oya's burden to

show a manifest specific prejudice. Finally, even assuming a specific manifest prejudice, the strength of the State's case on each count for which he was convicted mitigated this prejudice.

The State's evidence for the hit and run charge was strong. Boyd ended up on the ground because she was hit by the van. Boyd's leg was injured and her injury seemed apparent since she could not get up on her own, was limping when helped up, and her leg was swollen. Oya did not get out of the van to render reasonable assistance to Boyd. Oya left without rendering aid.

The State's evidence for the eluding charge and the endangerment enhancement was also strong. There was no evidence that Oya violated any stop signs, swerved, lost control, sustained a high speed, or struck any property or persons. But Officer Walsh estimated that Oya exceeded a 35 MPH speed limit and drove 70 to 75 MPH during one portion of the pursuit, which lasted a half a mile to three-quarters of a mile in total. And although the officers' testimony conflicted as to whether Oya stopped or merely slowed to 15 to 20 MPH before George left the van, both officers agreed that George jumped from the van rather than stepping out.

Officer Waddell, who testified that the van did *not stop*, was driving the patrol car directly behind Oya's van, while Officer Walsh was behind Officer Waddell and so may not have seen the events as clearly. Finally, George told Officer Waddell that he jumped from the van because he did not want to "be involved," thus indicating Oya's actions forced him to leap from the van. 4 RP at 412. Exceeding the speed limit by 35 MPH, even in a short burst, and not stopping to allow a passenger to properly exit a vehicle but continuing to drive 15 to 20 MPH while he or she leaps out exhibits indifference to harm that George could have sustained and that Oya acted rashly during the eluding. We conclude that the strength of the State's case with respect to his convictions mitigates the weak prejudice asserted by Oya, thus this factor weighs against severance.

19

2.    CLARITY OF DEFENSES

Oya argues that the clarity of defenses factor did not mitigate the prejudice he alleges because he was not able to testify in his own defense regarding the attempted eluding charge due to joinder.  This argument fails.

The clarity of defenses factor requires review of whether the defendant's defenses to each count was prejudiced by joinder.  *Russell*, 125 Wn.2d at 64.  Prejudice may result where a defendant may become embarrassed or confounded in presenting separate defenses.  *Bythrow*, 114 Wn.2d at 718.  For example, in *Cross v. United States*, the court vacated convictions of two defendants and remanded for new trials because it concluded that joinder of counts was prejudicial.  335 F.2d 987 (D.C. Cir. 1964).  The defendants in *Cross* did not specify at trial which counts they wished to remain silent on or why, but this apparently was because the trial court insisted that the issue of joinder had been determined finally in its denial of a pretrial motion to sever and refused to hear the defendants' arguments.  335 F.2d at 989-90.  The Court of Appeals determined that the record showed that Cross offered convincing evidence for the count he was acquitted of, but was plainly evasive and unconvincing in his testimony on the count upon which he was convicted.  *Cross*, 335 F.2d at 990.  The court held,

> Thus it would appear that Cross had ample reason not to testify on Count I and would not have done so if that count had been tried separately.  In a separate trial of that count the jury would not have heard his admissions of prior convictions and unsavory activities; nor would he have been under duress to offer dubious testimony on that count in order to avoid the damaging implication of testifying on only one of the two joined counts.  Since the joinder embarrassed and confounded Cross in making his defense, the joinder was prejudicial within the meaning of [Fed. R. Crim. P. 14].

*Cross*, 335 F.2d at 990-91.  Subsequent decisions have clarified that a defendant's desire to testify only on one count requires severance only if a defendant makes a convincing showing that he has

20

important testimony to give concerning one count and a strong need to refrain from testifying about another. *Russell*, 125 Wn.2d at 65.

Here, Oya argues that he was prejudiced because he was unable to testify as to the eluding. But Oya's arguments do not establish that his desire to testify regarding only one count amounted to such prejudice that his defenses were unclear and severance was required.

a.    IMPORTANT TESTIMONY REGARDING ELUDE COUNT NOT ESTABLISHED

First, Oya argues that his desire to testify regarding only the eluding charge requires severance because he had important testimony to give regarding the eluding to combat the State's subjective reckless driving evidence. Oya does not make a convincing showing that he had important testimony to give. Oya argued at trial that he had to testify about the eluding charge to get the lesser-included instruction of failure to obey a police officer and to challenge the enhancement. But Oya was given the lesser-included instruction despite not testifying.

His offer of proof at trial was that he would testify that (1) he did not intend to get away from the police and (2) he intended to park his van so that it would not get impounded because he was driving without a license. These offers of proof relate to his intent during the eluding, but even if the eluding charge was severed from the other charges, Oya would not have been permitted to testify about his reasons for eluding because such evidence is irrelevant.

Next, his offer of proof at trial was that he would have testified that he did not feel he was driving recklessly and did not put people in danger. But Oya's opinions and ultimate legal conclusions are also not admissible evidence. If Oya had offered that he intended to testify that he drove only the speed limit during the entire episode or eluded police because George had held a gun to his head in his van, *that* would be important testimony to give regarding the eluding—but

21

he offers no such factual showing here. His offer of proof fails to convincingly show that joinder prevented him from giving important testimony to defend against the eluding charge. This factor weighs against severance.

    b.    POTENTIAL EMBARRASSMENT

Next, Oya argues that he would be embarrassed if he had to testify about the assault and the hit and run. He states this is so because if he testified about eluding the police, that would likely open the door to testifying about the assault and hit and run, which would necessitate testifying about his "relationship with Ms. Boyd, her drug activities, the couple's argument and the accident [that] would have been a messy, embarrassing proposition for Mr. Oya." Br. of Appellant at 17. As in *Cross*, if Oya *had to* testify about the assault and the hit and run in order to testify about eluding, that could embarrass and confound Oya in making his defense that he did not drive recklessly for the reason he states, but the argument that Oya would *have to* testify about the assault and hit and run if he testified about eluding is premised on fallacy.

Oya wanted to testify regarding the eluding charge, in part, that he eluded the police because he did not want his car to be impounded. But a person's *reason* for eluding the police is not an element of attempting to elude. *See* RCW 46.61.024(1). Oya's proffered reason for eluding the police plainly seeks to negate any inference of a guilty conscience with respect to the assault and hit and run charges by replacing it with fear of having his van impounded. But severing the eluding charge from the hit and run as Oya requested would mean that the reason he was eluding police would not be admissible at all for the eluding charge because his reasons are not relevant to that charge. And if Oya merely testified about the nature of his driving on February 7—his speed

and observance of traffic laws—to show that he was not driving recklessly, that would not open the door to cross-examination about the assault and hit and run charges.

Oya has not shown that he was unable to testify. And we conclude that Oya has not shown his desire to testify only to the eluding charge amounts to prejudice requiring severance because he did not make a convincing showing that he had important testimony to give about the eluding or that he had a strong need to refrain from testifying about the assault and hit and run counts. *Russell*, 125 Wn.2d at 65. Accordingly, we conclude that the clarity of Oya's defenses was not prejudiced by joinder as he asserts and this factor weighs against severance.

4.     INSTRUCTIONS

Oya concedes that the trial court properly instructed the jury to consider each count separately, but he argues that it was insufficient to cure the prejudice from joinder as was the case in *State v. Harris*, 36 Wn. App. 746, 750, 677 P.2d 202 (1984). We disagree.

A court's instructions to a jury to consider each count separately can mitigate potential prejudice resulting from joinder. *Russell*, 125 Wn.2d at 66. A jury is presumed to follow a court's instructions. *State v. Lough*, 125 Wn.2d 847, 864, 889 P.2d 487 (1995). This is uncontested.

Oya argues that he was prejudiced because a "joint trial of these separate offenses created an improper impression that Mr. Oya has a 'general propensity' toward criminal acts," thus presumably prejudicing him on both conviction charges. Br. of Appellant at 24. Relying on *Harris*, Oya argues that consolidation in a trial is "not all that different" in terms of the prejudice rendered when introducing a past offense and, thus, a short limiting instruction cannot mitigate the resulting prejudice. Br. of Appellant at 19. But *Harris* does not stand for that general of a proposition that consolidation is inherently prejudicial. Rather, *Harris* involved sexual offenses

23

where the court recognized the "'great potential for prejudice inherent in evidence of prior sexual offenses'" and held that despite a proper instruction to consider each count separately, prejudice could not be cured. *Harris*, 36 Wn. App. at 752. Here, the evidence of an assault and a hit and run in addition to an elude charge does not involve the inherently prejudicial effect of prior sexual offenses in a sex offense case.

The trial court's instruction stated, "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count." CP at 50. Oya now argues that this instruction is problematic because it contains no admonishment that evidence from one count cannot be used in determining the verdict on the other count or that jurors should not presume Oya to be a law breaker because he is accused of committing multiple crimes over multiple days. But Oya never proposed such an instruction. Because this instruction matches 11 WPIC 3.01, at 80 (3d ed. 2008) for multiple counts/single defendant crimes, we find no error with respect to the instruction and conclude that the jury is presumed to have followed this proper instruction, mitigating Oya's claimed prejudice of the jury believing that he has a general propensity towards crime. *Lough*, 125 Wn.2d at 864. Thus, this factor weighs against severance.

5.    CROSS ADMISSIBILITY OF EVIDENCE

Oya argues that the evidence from the charges was not cross admissible. We conclude that some evidence was cross admissible.

We review whether evidence of each count would be cross admissible to prove the other charges under ER 404(b) if severance were granted. *Russell*, 125 Wn.2d at 66. Evidence of other crimes or acts is inadmissible to prove character. ER 404(b). Such evidence may, however, be

admissible for other purposes such as intent or knowledge. ER 404(b). Admissibility of evidence under ER 404(b) requires a three-part analysis: the court must identify the purpose for which the evidence will be admitted, the evidence must be relevant to that purpose and of consequence to the outcome, and the court must balance the probative value of the evidence against any unfair prejudicial effect the evidence may have upon the fact-finder. ER 404(b).

a.      EVIDENCE OF ELUDING WAS NOT CROSS ADMISSIBLE TO ESTABLISH IDENTITY

First, Oya argues that the evidence was not cross admissible to establish identity. We agree.

Evidence of other crimes is relevant on the issue of identity only if the method employed in the commission of both crimes is "so unique" that proof that an accused committed one of the crimes creates a high probability that he also committed the other crimes. *Russell*, 125 Wn.2d at 66-67. Here, Boyd identified Oya as the driver for the assault and hit and run charges. And Officer Walsh arrested Oya immediately after he exited the van following the attempted eluding, which establishes Oya's identity for the enhancement as well. Thus, evidence of each charge was not relevant to identity because Oya's identity was ascertainable from the evidence unique to each charge. *Russell*, 125 Wn.2d at 66-67.

b.      EVIDENCE OF ELUDING WAS NOT CROSS ADMISSIBLE TO ESTABLISH WHY POLICE SOUGHT OUT OYA

Oya argues that evidence of the assault and the hit and run was not cross admissible to show why police were looking for Oya's van the day of the eluding because knowing exactly why they were searching for the van is irrelevant to proving eluding. We agree.

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be otherwise.

25

ER 401. The true test of admissibility is whether the other crimes' evidence is relevant and necessary to prove an essential ingredient of the crime charged. *State v. Weddel*, 29 Wn. App. 461, 466, 629 P.2d 912 (1981). The State could have elicited testimony from either Officer Walsh or Officer Waddell that the police were looking for the van simply because it was previously involved in a crime: *the reason* for police pursuit is not an "essential ingredient" for the crime of attempting to elude pursuing police. *Weddel*, 29 Wn. App. at 466. Thus, evidence of the hit and run and assault was not cross admissible for this reason advocated for by the State.

  c.  EVIDENCE OF FLIGHT IS CROSS ADMISSIBLE

Oya argues that evidence of the eluding charge was not cross admissible as evidence of flight to be used to infer consciousness of guilt with respect to the assault and hit and run charges. We disagree.

    i.  EVIDENCE OF ELUDING WAS PROBATIVE EVIDENCE OF FLIGHT RELEVANT TO THE OTHER CHARGES

Oya argues that evidence of eluding is not cross admissible as evidence of flight to show consciousness of guilt with respect to the assault and the hit and run charges. Again, we disagree.

"Evidence of flight is admissible if it creates 'a reasonable and substantive inference that defendant's departure from the scene was an instinctive or impulsive reaction to a consciousness of guilt or was a deliberate effort to evade arrest and prosecution.'" *State v. Freeburg*, 105 Wn. App. 492, 497, 20 P.3d 984 (2001) (quoting *State v. Nichols*, 5 Wn. App. 657, 660, 491 P.2d 677 (1971)). "When evidence of flight is admissible, it tends to be only marginally probative as to the ultimate issue of guilt or innocence." *Freeburg*, 105 Wn. App. at 498. "Therefore, while the range of circumstances that may be shown as evidence of flight is broad, the circumstance or inference

of consciousness of guilt must be substantial and real, not speculative, conjectural, or fanciful." *Freeburg*, 105 Wn. App. at 498.

Oya relies on *State v. Price*, 126 Wn. App. 617, 645, 109 P.3d 27 (2005), and *Freeburg* to argue that his conduct on February 7 was not evidence of flight because he did not leave Washington and because the inference of consciousness of guilt from the eluding is speculative, not substantial or real. First, neither *Price* nor *Freeburg* state that flight occurs only where a defendant leaves the State where the crime occurred. *Freeburg* says the opposite: it states actual flight is not required, but evidence of resistance to arrest, concealment, assumption of a false name, and related conduct are also admissible as evidence of flight. 105 Wn. App. at 497-98. Thus, Oya's first argument fails.

Second, comparison of this case to *Price* and *Freeburg* demonstrates that the inference of consciousness of guilt of the assault and hit and run charges from the eluding charge is substantial and real, not speculative. In *Price*, this court found evidence was admissible that Price traveled outside of Washington shortly after a murder with a "backpack full of grooming supplies, medications, and hair trimmers" that he used to change his appearance. 126 Wn. App. at 645. The court concluded that this evidence was admissible because it was relevant to Price's consciousness of guilt, because it supported a reasonable inference that he left the State to avoid arrest and prosecution. *Price*, 126 Wn. App. at 645. Similarly, here, Oya's eluding of two patrol cars with their lights and sirens on for over half a mile just three days after the incident at the gas station allows for a reasonable, substantial, and real inference of consciousness of guilt of the charged crime.

In *Freeburg*, a defendant was arrested in Canada with a handgun in his boot two years after a murder. 105 Wn. App. at 500. The *Freeburg* court found that the gun was not admissible evidence of flight to show consciousness of guilt for the murder where the gun was not the one used in the murder and where the arrest occurred two years after the murder. 105 Wn. App. at 500. While it would have been speculative in *Freeburg* to infer Freeburg's consciousness of guilt of a murder from two years ago just because he was carrying a gun in another country, here it was not speculative to infer consciousness of guilt of the other charges from Oya's eluding. We thus conclude that Oya's eluding conduct on February 7 was at least marginally probative as evidence of flight to make a reasonable inference of Oya's consciousness of guilt for the assault and hit and run charges.

ii.    PROBATIVE VALUE OF FLIGHT EVIDENCE IS NOT OUTWEIGHED BY PREJUDICE

Oya argues in essence that even if the eluding evidence was admissible as flight evidence, the admission of the eluding evidence to infer consciousness of guilt of the assault and hit and run charges was more prejudicial than probative. This argument fails.

Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be otherwise. ER 401. Relevant evidence may still be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or needless presentation of cumulative evidence. ER 403. We do not consider claims unsupported by legal authority or argument. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Oya argues that the cross admission of the eluding evidence was prejudicial with respect to the endangerment enhancement and to the assault and the hit and run charges because it invited

28

speculation that Oya "is the kind of person who uses a motor vehicle to hurt, or nearly hurt, others." Br. of Appellant at 24. But Oya does not support his claim of prejudice with respect to the eluding and hit and run charges or the endangerment enhancement with any citation to the record or legal analysis. We decline to consider this argument further. *Cowiche Canyon*, 118 Wn.2d at 809; RAP 10.3(a)(6).

We conclude that although the flight evidence of eluding may have had minor probative value regarding the hit and run case, Oya does not meet his burden to show that the probative value was substantially outweighed by the danger of unfair prejudice. We conclude that evidence of the eluding was cross admissible to the hit and run and assault charges and, thus, this factor weighs against severance.

6.    INTEREST IN JUDICIAL ECONOMY

Oya argues that two trials would not have strained judicial resources, but failure to sever was prejudicial. We reject this argument.

The court must "weigh any prejudice to the defendant resulting from joinder against the need for judicial economy." *Russell*, 125 Wn.2d at 68. Foremost among the concern for judicial economy is the conservation of judicial resources and public funds. *Bythrow*, 114 Wn.2d at 723. In examining whether a trial court abused its discretion by refusing to sever offenses, joinder may prejudice a defendant in that "'the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find.'" *Bythrow*, 114 Wn.2d at 718 (quoting *Smith*, 74 Wn.2d at 755). When the issues are relatively simple and the trial lasts only a couple of days, the jury can be reasonably expected to compartmentalize the evidence and, under

these circumstances, "there may be no prejudicial effect from joinder even when the evidence would not have been admissible in separate trials." *Bythrow*, 114 Wn.2d at 721.

Here, testimony for this case occurred over two days. Given that short period of time and that the issues were relatively simple, the jury can be reasonably expected to have compartmentalized the evidence. *Bythrow*, 114 Wn.2d at 721. Two trials would require two courtrooms and sets of jurors as well as double the expenditure of time for voir dire, weighing against severance. And as analyzed above, all four of the factors tend to mitigate the prejudices alleged by Oya from joinder. Finally, although Oya makes several general arguments related to prejudice, he does not establish a manifest, specific prejudice that outweighs a concern for judicial economy. *Bythrow*, 114 Wn.2d at 718. Thus, we conclude that the minimal prejudice to Oya resulting from joinder did not outweigh considerations of judicial economy.

We affirm Oya's convictions and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

MAXA, J.